# Troxell, Appellant, v. Anderson Coal Mining Company.

*Mines and mining—Royalties—Minimum royalty—Faults in strata—Lease —Review.*

Where a coal lease provides for the mining of a stated number of tons of coal per year, and the payment of royalty thereon whether the coal is mined or not "unless prevented by faults in the strata unforeseen," the lessor will not be prevented from recovering the minimum royalties for the first year, because the lessee in attempting to reach the coal from an adjoining mine was prevented from doing so by faults in the strata of such mine. In such a case if it appears that at the time of the trial, which was after the termination of the first year of the lease. the coal had been reached without difficulty by an opening on the leased premises, it is reversible error for the court to refuse to charge that the lessee had not made the effort to mine the coal in the first year, which was required by the terms of the contract. The lessor cannot be charged with having acquiesced in the claim made by the lessee, that the unavailing effort to reach the coal from the adjoining mine was a sufficient compliance with the terms of the lease; and the rule does not apply that "When a case is submitted to the jury from a standpoint from which both parties to the issue manifestly tried it, the court cannot be said to have erred because it was not submitted from another, which may really have been the true one."

*Appeals—Review—Assignments of error.*

Where no error is assigned to a particular instruction of the trial court, the appellant cannot, in anticipation of a reversal, ask the appellate court to pass upon the correctness of such instruction for the guidance of the court below on a retrial of the case. The appellate court does not sit as an advisory board for lower courts, but to correct errors brought up by proper assignments.

Argued Oct. 30, 1905. Appeal, No. 189, Oct. T., 1905, by plaintiff, from judgment of C. P. Cambria Co., June T., 1904, No. 63, on verdict for defendant in case of J. M. Troxell, Perry Troxell and George L. Glasgow v. The Anderson Coal Min-

ing Company.   Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.   Reversed.

Assumpsit for coal royalties.   Before O'CONNOR, P. J.
The facts are stated in the opinion of the Supreme Court.
Verdict and judgment for defendant.   Plaintiff appealed.

*Error assigned* among others was (12) answer to plaintiff's seventh point, point and answer being quoted in the opinion of the Supreme Court.

*A. L. Cole, Alvin Evans*, with them *John E. Evans*, for appellant.—It is not shown by the testimony that it was impracticable to open the coal on the leased premises, nor is there any provision in the lease that it should be opened in any other way or at any other point.

Surely it cannot be contended that the parties contemplated at the time of making this contract that the payment of minimum royalties should depend upon faults in the strata of adjoining property.

*A. V. Barker*, with him *S. L. Reed* and *Fred D. Barker*, for appellee.—A judge who submits a case to a jury in the manner in which it is presented by counsel, ought not to be convicted of error for not presenting it in some other way to which his attention had not been called : Hartley v. Decker, 89 Pa. 470 ; Maus v. Maus, 6 Watts, 275 ; Torrance v. Torrance, 53 Pa. 505.

An appellant will not be permitted to avail himself of matters of defense not raised in the court below : Snevily v. Egle, 1 W. & S. 480 ; Cope v. Kidney, 115 Pa. 228.

OPINION BY MR. JUSTICE BROWN, January 2, 1906 :

On August 28, 1902, the appellants leased property belonging to them in Reade township, Cambria county, to E. F. Spencer, A. T. Beers and William D. McCausland, for the purpose of mining coal.   The lease, with the assent of the lessors, was assigned to Christian P. Anderson, who assigned it to the appellee, The Anderson Coal Mining Company, and this suit was brought against it to recover the balance alleged to be due

on the first year's minimum royalty of $1,800, or six cents per ton for 30,000 tons of coal. The covenant in the lease which is the basis of appellants' claim is, that the lessees will " mine and ship from the said premises not less than thirty thousand tons during each and every year during the continuance of this lease, and shall pay royalty for said amount whether mined and shipped or not, unless prevented by faults in the strata unforeseen, difficulties in the mines, strikes, scarcity in car supply or other unavoidable causes."

On the trial of the cause it appeared that during the first year no effort to mine the coal had been made on the leased premises, but an attempt was made to reach it through a mine operated by the appellee on adjoining land known as the Van Ormer tract; and the jury were instructed that, if faults were encountered there which rendered it impossible to reach the coal on the leased premises, the plaintiffs could not recover. Under the testimony submitted by the defendant the jury found that faults in the adjoining mine had prevented it from reaching and mining the coal on the leased premises, and the verdict was in its favor. We need not consume time in demonstrating the self-evident proposition that the lease contemplated an effort on the leased premises to reach the coal, and that the faults contemplated were such as might be there encountered. Indeed, this is not questioned by the appellee, but it is urged that, as the cause was tried on the theory that there could be no recovery if the defendant company was prevented from reaching the coal on the leased land by faults in the strata on the Van Ormer tract, we ought not to disturb the judgment. If the record showed that the cause had been tried upon that theory alone, and nothing more appeared, we would not interfere with the judgment, for if the lessors themselves had put such an interpretation on the agreement, it would be too late for them, after a verdict against them, to complain of the consequences resulting from their own construction of the lease. When a case is submitted to a jury from the standpoint from which both parties to the issue manifestly tried it, the court cannot be said to have erred because it was not submitted from another, which may really have been the true one : Hartley v. Decker, 89 Pa. 470; Carpenter v. City of Lancaster, 212 Pa. 581.

The defendant undertook to show, without objection from

the plaintiffs, that it had made an effort to reach the coal on the leased premises through the opening on the Van Ormer land, but had been prevented from doing so by the faults there found in the strata. In rebuttal, the plaintiffs offered testimony to show that if proper efforts had been made on the adjoining land the coal on theirs might have been reached, and, as just stated, if there were not more on the record, we would not reverse. It appears, however, that the plaintiffs, in meeting the defense as made out by the appellee, did not conclude themselves from asking that the case be tried on the proper theory, that the effort to mine the coal should have been made on the leased premises. Though no effort was made during the first year to open the coal on these premises, it appeared on the trial that at that time—September 21, 1904—coal was opened on them. C. R. Ellicott, the resident manager of the appellee, and called by it as a witness, was asked on cross-examination: " Q. During the time you were there the work in which you were engaged was principally in the directing of the mines and the shipment of coal from the Van Ormer tract? . A. Yes, sir. Q. But not upon the Glasgow and Troxell? A. No, sir. . . . . Q. You did get into the Troxell and Glasgow tract? A. Yes, sir; we are in there now. . . . . Q. So far as anything is disclosed from the condition of the mine as it appears there now, there is no fault on the Troxell and Glasgow tract? A. Not where we tried to turn the heading. " Another witness called by the defendant—James Logan, its mine foreman—on cross-examination, testified as follows : Q. The faults that you have observed are all on the Van Ormer property ? A. Yes, sir. Q. From the investigations which you made there were no faults visible on the Troxell and Glasgow tract? A. No, sir; not at present. Q. So far as it appears now, from an inspection of the mine, the coal of the Glasgow and Troxell tract is in its normal condition? A. Yes, sir. Q. You have so far no evidence or intimation of the fault on that property? A. No, sir." The seventh point submitted by the plaintiffs was as follows: " The defendant having failed to show that any effort was made to mine the coal on the Glasgow and Troxel property from the opening, on that property itself, and the evidence being that the coal was opened on that property the defendant did not make the effort to mine the 30,000 tons of coal, which was

required under the terms and conditions of the contract."
This was a distinct statement by the plaintiffs before the case
was submitted to the jury of just what their contention was,
and the point should have been affirmed. It stated the true
construction of the agreement and what the plaintiffs had a
right to insist upon from the defendant, which ought to have
done from the beginning what it was doing in September, 1904.
The answer to the point was: "We cannot affirm the point as
a legal proposition. There is no evidence that any effort was
made to open the coal upon the property described in the lease.
There is no evidence that it could be done to any advantage.
There is some evidence that some vein of coal was opened
by Mr. Spencer, but there is no evidence that it was a feasi-
ble point from which to mine the coal or that it was intended
that any extensive mining operations should be pursued at that
point."

The assignments relating to the scarcity of cars need not be
considered, for that question cannot be regarded as involved in
the case in the absence of any effort by the appellee to mine
the coal in accordance with the agreement. Its learned counsel
make the following frank admission in their printed argument:
"The undisputed evidence in the case showing that cars enough
had been received at this particular mine to ship over thirty
thousand tons during the year 1903, the irresistible conclusion
is that the jury so found, and the question of car supply, as an
independent matter of defense being 'out of the way altogether,'
the verdict was based upon the other question in the case."

We are asked by the appellants to pass upon the correctness
of the instruction by the court below, that if they were entitled
to recover, the verdict should be for the balance of the royalty
for the first full mining and shipping year ending December 1,
1903. Of this, of course, they do not complain, but in their an-
ticipation of a reversal they ask for an expression from us as to
the correctness of the instruction for the guidance of the court
below on a retrial of the case. We do not sit as an advisory
board for lower courts, but to correct errors alleged to have been
committed by them when brought up to us by proper assign-
ments. The first, fourth, fifth, sixth and twelfth assignments
are sustained and the judgment is reversed with a venire facias
de novo.